J-S22010-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JOSE LUIS NUNEZ-AVALOS | : | |
| | : | |
| Appellant | : | No. 1879 MDA 2018 |

Appeal from the Judgment of Sentence Entered October 25, 2018
In the Court of Common Pleas of Adams County Criminal Division at
No(s):  CP-01-CR-0001417-2017

BEFORE:   SHOGAN, J., DUBOW, J., and PELLEGRINI*, J.

MEMORANDUM BY SHOGAN, J.:                        **FILED AUGUST 14, 2019**

Appellant, Jose Luis Nunez-Avalos, appeals from the judgment of sentence entered following his convictions for driving under the influence of alcohol ("DUI") general impairment, DUI highest rate of alcohol, and driving without a license.[1]  We affirm.

The trial court summarized the factual and procedural history of this case as follows:

> Testimony developed at the non-jury trial held on August 21, 2018[,] revealed the following events occurred.  On November 7, 2017[,] at approximately 4:09 p.m., Trooper Manivong of the Pennsylvania State Police was dispatched to the area of 122 Kime Avenue in Bendersville Borough, Adams County, Pennsylvania[,] for a report of a possible intoxicated driver that had picked up children.[4]  Upon arrival at 122 Kime

---

[1]  75 Pa.C.S. § 3802(a)(1); 75 Pa.C.S. § 3802(c) with enhancements under 75 Pa.C.S. §§ 3804(c.1) and 3803(b)(5); and 75 Pa.C.S. § 1501(a). Sentencing Order, 10/30/18, at 1.

---

*   Retired Senior Judge assigned to the Superior Court.

Avenue, Trooper Manivong observed a tan Ford F150 pickup parked partially on Kime Avenue with its break lights illuminated.[5] Trooper Manivong approached the driver's side of the vehicle, observed the engine running, and identified Appellant as the driver.

> [4] Trooper Laythong Manivong is a Pennsylvania State Trooper with ten (10) and a half years of experience as a law enforcement officer. Trooper Manivong has training in criminal law, traffic law, Standard Field Sobriety Test ("SFST"), and has taken the Advanced Roadside Impairment Driving Course ("ARIDE"). Trooper Manivong has handled over one hundred DUI arrests in his career.

> [5] Kime Avenue is an undivided two lane road at that location.

Trooper Manivong made contact with Appellant and asked Appellant "Sir, are you here to pick up children?"[6] There were two minor children located in the back seat of the vehicle. The children were not properly restrained by a child car seat or youth car seat.[7]

Trooper Manivong detected an odor of alcohol emanating from Appellant while speaking with him. Trooper Manivong observed Appellant was lethargic and had glassy red eyes. Trooper Manivong escorted Appellant's children from the vehicle to the nearby home of Appellant's estranged wife. Trooper Manivong then instructed Appellant to shut off and exit the vehicle. Appellant told Trooper Manivong he could not find his driver's license and did not produce a driver's license during his interaction with Trooper Manivong.[8]

> [6] Appellant did not have a fixed address. His estranged wife had a Protection from Abuse order against him at the time. Appellant was residing at a temporary address.

> [7] The exact age of the children was not testified to. Trooper Manivong testified the children were under the age of 18 and needed child restraint seats.

[8] At trial, Trooper Manivong testified he was still unable to determine if Appellant has a valid driver's license.

Trooper Manivong had Appellant perform the one-leg stand and the walk-and-turn test. When asked to perform the one-leg stand, Appellant indicated he understood the instructions. Trooper Manivong observed several indicators of intoxication during the one-leg stand test. Next, Appellant was asked to perform the walk-and-turn test. Appellant indicated that he understood the instructions and attempted to perform the test. Appellant failed to successfully perform or complete the walk-and-turn test. Based on his observations and interaction with Appellant, Trooper Manivong determined that Appellant was intoxicated to a degree that rendered Appellant incapable of safely operating a motor vehicle. Trooper Manivong placed Appellant under arrest for DUI.[9]

Trooper Manivong transported Appellant to Gettysburg Hospital for a blood draw. Appellant consented to a blood draw, which was conducted at 5:22 p.m. The blood was sealed in a blood kit and sent for testing. A stipulated lab report, admitted as Commonwealth's Exhibit 1, indicated Appellant had a blood alcohol content of .233 percent.[10]

This [c]ourt found Appellant guilty of all charges. On October 25, 2018, this [c]ourt sentenced Appellant to twenty[-]four months in the intermediate punishment program with 120 days restrictive intermediate punishment.[11, 12] On November 14, 2018, Appellant timely filed his Notice Of Appeal. On November 19, 2018, this [c]ourt ordered Appellant to file a concise statement of matters complained of on appeal. Appellant timely filed his Concise Statement on December 4, 2018.

[9] A DVD recording of the MVR in Trooper Manivong's patrol car was played for this [c]ourt. The recording was admitted as Commonwealth's Exhibit 2. Approximately 12 minutes of the MVR was played at trial and corroborated Trooper Manivong's testimony.

[10] There was a stipulation that Appellant had already received ARD for a prior DUI in Adams County and this was a second offense DUI for mandatory sentencing purposes.

[11] Count one merged with count two for sentencing purposes.

[12] The restrictive intermediate punishment portion of the sentence consisted of 60 days at the work release facility of the Adams County Adult Correctional Complex and 60 days to be served on house arrest with electronic monitoring. Appellant was also sentenced to a mandatory 100 hours of community service as well as applicable fines and costs.

Trial Court Opinion, 12/13/18, at 1-3. The trial court filed its opinion pursuant to Pa.R.A.P. 1925(a).

On appeal, Appellant presents the following issue for our review: "Whether the evidence presented at trial was sufficient to prove beyond a reasonable doubt that [Appellant] was in actual physical control of the movement of the vehicle?" Appellant's Brief at 7. Appellant asserts that at the time of his encounter with Trooper Manivong, Appellant's vehicle was parked near the side of a street in a residential neighborhood. *Id.* at 12. Appellant acknowledges that "the engine was running and [Appellant's] two minor children were seated, unrestrained, in the backseat." *Id.* Appellant maintains that the Commonwealth did not produce credible evidence that he was observed driving prior to his apprehension. *Id.* Instead, Appellant counters, the evidence was consistent with his using the vehicle for shelter. *Id.* at 14. Appellant argues that case law makes clear that "it is not a crime to merely sit in a car while intoxicated." *Id.* at 15. Appellant argues that because the evidence falls short of the "proof beyond a reasonable doubt"

- 4 -

standard, the convictions should be vacated and Appellant should be discharged. ***Id.***

The standard for evaluating sufficiency claims is as follows:

The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the finder of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

***Commonwealth v. Estepp***, 17 A.3d 939, 943-944 (Pa. Super. 2011).

A violation for DUI pursuant to 75 Pa.C.S. § 3802(a)(1) is defined as follows:

**(a)  General impairment.**--

(1) An individual may not drive, operate or be in actual physical control of the movement of a vehicle after imbibing a sufficient amount of alcohol such that the individual is rendered incapable of safely driving, operating or being in actual physical control of the movement of the vehicle.

75 Pa.C.S. § 3802(a)(1). 75 Pa.C.S. § 3802(c) further provides:

> **(c) Highest rate of alcohol.**--An individual may not drive, operate or be in actual physical control of the movement of a vehicle after imbibing a sufficient amount of alcohol such that the alcohol concentration in the individual's blood or breath is 0.16% or higher within two hours after the individual has driven, operated or been in actual physical control of the movement of the vehicle.

75 Pa.C.S. § 3802(c).

"The term 'operate' requires evidence of actual physical control of either the machinery of the motor vehicle or the management of the vehicle's movement, but not evidence that the vehicle was in motion." ***Commonwealth v. Johnson***, 833 A.2d 260, 263 (Pa. Super. 2003).

> Our precedent indicates that a combination of the following factors is required in determining whether a person had "actual physical control" of an automobile: the motor running, the location of the vehicle, and additional evidence showing that the defendant had driven the vehicle. A determination of actual physical control of a vehicle is based upon the totality of the circumstances. The Commonwealth can establish through wholly circumstantial evidence that a defendant was driving, operating or in actual physical control of a motor vehicle.

***Commonwealth v. Williams***, 871 A.2d 254, 259 (Pa. Super. 2005) (internal citations omitted).

This Court addressed a similar claim in ***Williams***, where the defendant was convicted of two counts of DUI. ***Williams***, 871 A.2d at 257. In that case, the defendant argued that the evidence was insufficient to support his DUI convictions because the Commonwealth failed to establish that he was in "actual physical control" of the vehicle while intoxicated because the vehicle was off the roadway and was not moving. ***Id.*** at 258. The trial evidence

disclosed that police found the defendant at 4:00 a.m. in his car with the headlights and radio on and the engine running; the car was parked diagonally across two handicapped spaces in front of an establishment that did not serve alcoholic beverages; the defendant's employer owned the car, and only the defendant had permission to drive it; and the defendant was in the driver's seat with his hands and head on the steering wheel. *Id.* at 260-261. The defendant showed visible signs of intoxication, admitted drinking, failed several field sobriety tests, and had a BAC of .138%. *Id.* at 261. The court specifically rejected as incredible the defendant's defense that someone else had been driving the vehicle. *Id.* This Court agreed with the trial court's conclusion that the evidence was sufficient to establish that the defendant was in actual control of a motor vehicle while intoxicated. *Id*.; *see also Commonwealth v. Yaninas*, 722 A.2d 187, 188-189 (Pa. Super. 1998) (court found the appellant was in actual physical control of vehicle for purposes of DUI conviction where appellant was found behind wheel of vehicle, on the berm of a highway, with engine running and lights on, despite the car not moving).

In addressing Appellant's issue, the trial court provided the following analysis:

> Upon arriving at 122 Kime Avenue, Trooper Manivong observed Appellant's vehicle parked partially in the lane of travel on Kime Avenue with its break lights illuminated and engine running. Trooper Manivong approached Appellant's vehicle and observed Appellant in the driver's seat. When asked what Appellant was doing there, Appellant replied he was there to pick

up his children, who were located in the back seat of Appellant's vehicle. Appellant's vehicle was parked near his estranged wife's residence. Appellant does not reside with his estranged wife, and she had a Protection from Abuse order against Appellant at the time. These circumstances support an inference Appellant was in actual physical control of his vehicle when Trooper Manivong had contact with Appellant and that Appellant had driven his vehicle to 122 Kime Avenue shortly before Trooper Manivong arrived on the scene.

Trial Court Opinion, 12/13/18, at 6.

We agree with the trial court's conclusion. Here, the totality of circumstances established that Appellant was in actual physical control of the vehicle. The record reflects that when Trooper Manivong approached Appellant's vehicle, it was parked partially in the lane of travel on Kime Avenue with its break lights illuminated and engine running. N.T., 8/21/18, at 6-7, 20. Appellant was in the driver's seat of the vehicle. *Id.* Appellant, who did not live nearby, informed Trooper Manivong that he was there to pick up his children, who were at the time in the backseat of the vehicle, unrestrained. *Id.* at 7-8, 21, 24. Thus, as the trial court found, the totality of circumstances supports the conclusion that Appellant was in actual physical control of the vehicle.[2] Furthermore, as is made clear by case law and contrary to Appellant's assertion, there is no requirement that Appellant actually be observed driving the vehicle for a determination to be made that he was in

---

[2] Appellant does not challenge the fact that he was intoxicated.

actual physical control of the vehicle for purposes of the DUI statute.[3]

***Johnson***, 833 A.2d at 263. Appellant is entitled to no relief.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 08/14/2019

---

[3] Appellant relies on ***Commonwealth v. Byers***, 650 A.2d 468, 469 (Pa. Super. 1994), in support of his claim, and argues that ***Byers*** stands for the proposition that "actual physical control" requires "at a very minimum, a parked car should be started and running before a finding of actual physical control can be made." Appellant's Brief at 12. As the record reflects, in this case the vehicle's engine was on, the vehicle was parked partially in the roadway, Appellant was in the driver's seat, and the brake lights were on indicating that Appellant had his foot on the brake pedal. Thus, the factors in this case creating an inference that Appellant was in actual physical control of the vehicle exceed the minimum evidentiary factors Appellant maintains must exist pursuant to ***Byers***.

We further note that, while not overruling ***Byers***, the Pennsylvania Supreme Court strongly criticized it in ***Commonwealth v. Wolen***, 685 A.2d 1384 (Pa. 1996) (plurality): "While it may be laudable that one who realizes that he is incapable of safe driving pulls over to 'sleep it off,' the legislature has made no exception to the reach of the statute to such individuals. Accordingly, such a person's threat to public safety is not a relevant consideration under the drunk driving statutes." ***Id.*** at 1386 n.4.